JS-6  O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677 DOC (DTBx)                    Date: August 26, 2013

Title: RICHARD MAXIMO v. ASPEN CONTRACTING CALIFORNIA LLC, et al.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | N/A |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND TO STATE COURT**

Before the Court is a Motion to Remand (Dkt. 8) filed by Plaintiff Richard Maximo ("Plaintiff"). After reviewing the motion, opposition, reply, and sur-reply, the Court hereby GRANTS Plaintiff's Motion.[1]

**I.    Background**

Defendant Aspen Contracting California LLC ("Defendant") is engaged in the business of providing courier and delivery services. Notice of Removal (Dkt. 1) at Ex. A, ¶ 13. Plaintiff is a delivery driver working for Defendant. *Id*. ¶ 5. On February 15, 2013, Plaintiff filed in state court a class action against Defendant seeking recovery of unpaid wage and penalties for violations of various provisions of the California Labor Code. *Id*. ¶ 1. Plaintiff alleged that Defendant failed to: pay overtime wages, *id*. ¶ 43, pay the minimum wage, *id*. ¶ 54, provide meal periods, *id*. ¶ 58, provide accurate wage statements, *id*. ¶ 65, pay former employees their full wages in a timely manner, *id*. ¶ 70, properly classify their employees, *id*. ¶ 76, conduct lawful business practices, *id*. ¶ 80, or indemnify employees for expenses, *id*. ¶ 91.

In his complaint, Plaintiff alleged that his individual claim, including all other requested relief, was under the $75,000 federal jurisdictional threshold, and that the aggregate class claim, including "attorneys' fees and costs, and all other requested relief," was likewise under the $5 million federal jurisdictional requirement. *Id*. ¶ 25, 26.

---

[1] The Court finds the matter appropriate for decision without oral argument. Fed R. Civ. P. 78; L. R. 7-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677-DOC (DTBx)                 Date: August 26, 2013
                                                                                         Page 2

       On February 21, 2013, Plaintiff mailed the original Summons and Complaint to Defendant, return receipt requested. Mot. to Remand at 5. Plaintiff did not address the mailing to any specific individual, and instead addressed it generally to "Aspen Contracting California, LLC dba Nobel Logistics, Inc."[2] Opp'n (Dkt. 10) at 3. On February 25, 2013, Sheridan Pierce ("Pierce"), a temp who was assigned to Defendant's front desk as a receptionist, received and signed the service of process. *Id*. Pierce was generally authorized to accept mail on Defendant's behalf, but was not authorized to accept service of process and was not a company officer, general manager, or company employee. *Id*. Plaintiff never filed proof of service for the alleged February 21, 2013, service. *Id*.

       On March 7, 2013, Plaintiff filed his First Amended Complaint ("FAC"). Mot. to Remand at 6. On March 13, 2013, Plaintiff served the FAC and Summons on Defendant's designated agent for service of process, Capitol Corporate Services, Inc. *Id*.; Opp'n at 2. On April 5, 2013, Plaintiff filed proof of service for the March 13, 2013, service. Opp'n at 4.

       On April 12, 2013, Defendant filed its Notice of Removal asserting jurisdiction under the Class Action Fairness Act ("CAFA"). *See* Notice of Removal. Attached to the Notice of Removal as Exhibit A was a copy of the original Summons and Complaint served on Pierce on February 25, 2013. Reply (Dkt. 12) at 6.

       Plaintiff now moves to remand the action to state court.

**II.**        **Discussion**

       **a.**        **Timeliness**

       First, Plaintiff argues that this case should be remanded because Defendants did not timely file their motion for removal. The Court disagrees.

       **1. Legal Standard**

28 U.S.C. § 1446(b) governs the timeliness of removal:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30

---

[2] Plaintiff apparently misaddressed the letter to "Nobel" Logistics, Inc. instead of "Noble" Logistics, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677-DOC (DTBx)　　　　　　　　　　　　　　Date: August 26, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3

---

　　　　　days after the service of summons upon the defendant if such initial
　　　　　pleading has then been filed in court and is not required to be served
　　　　　on the defendant, whichever period is shorter.

Section 1446(b) "identifies two thirty-day periods for removing a case." *Kuxhausen v. BMW Financial Services NA* LLC, 707 F.3d 1136, 1139 (9th Cir. 2013) (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010)).

　　　　　The first thirty-day removal period is triggered if the case stated by the
　　　　　initial pleading is removable on its face. The second thirty-day
　　　　　removal period is triggered if the initial pleading does not indicate that
　　　　　the case is removable, and the defendant receives a copy of an
　　　　　amended pleading, motion, order or other paper from which
　　　　　removability may first be ascertained.

*Id.* (internal quotation marks omitted).

### 2. Analysis

　　　　A plaintiff challenging a defendant's removal as untimely bears the burden of demonstrating that service of process was proper. *See, e.g.*, *Bachilla v. Pac. Bell Tel. Co.*, 2007 WL 2765689, at *3 (E.D. Cal. Sept. 19, 2007); *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

　　　　Plaintiff cites to *Cruz v. Fagor America, Inc.*, for the proposition that "evidence that a mailed summons actually reached the individual to be served is sufficient to establish valid service, and thus to establish substantial compliance, even if the summons was signed for by someone who did not have the authority to do so." 146 Cal. App. 4th 488, 500 (2007). Plaintiff contends that, though the Summons and Complaint were improperly addressed and an unauthorized temp received and signed for them, the documents reached Defendant's authorized officers and, therefore, service of process was completed on February 25, 2013. *See* Reply at 6. Plaintiff's only evidence for this theory is the fact that "the original Summons and Complaint were included as Exhibit A in Defendant's Removal despite the fact that Plaintiff did not include the original Summons and Complaint when he filed and served the FAC and Summons." *Id.*

　　　　There are two problems with Plaintiff's theory. First, Plaintiff ignores the other routes through which Defendant's counsel could have obtained the document attached to its Notice of Removal as Exhibit A. For example, Defendant contends that Exhibit A is *not* the Summons and Complaint served by mail on February 21, 2013, but rather is an electronic copy from the San Bernardino Superior Court's online records. *See* Sur-reply (Dkt. 19) at 1–2. Furthermore, even if the original Summons and Complaint was attached to the Notice of Removal, this provides no evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677-DOC (DTBx)                  Date: August 26, 2013
                                                                                             Page 4

---

as to *when* Defendant's authorized individuals received service of process. The date of receipt is the relevant inquiry in determining whether the notice of removal was properly filed within the thirty day window.

Plaintiff has the burden of proving that service of the original Summons and Complaint was proper. Plaintiff has failed to meet that burden.

### b. CAFA Amount in Controversy

Second, Plaintiff argues that Defendant has failed to meet its burden of establishing an amount in controversy above the $5,000,000 jurisdictional threshold. The Court agrees.

### 1. Standard of Proof

Under CAFA, federal district courts have original jurisdiction over any civil action in which (a) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, (b) a class action is being asserted on behalf of 100 or more members, and (c) any member of the purported plaintiff class is a citizen of a state different from any defendant. *See* 28 U.S.C. 1332(d)(2)(A), 1453(a), and 1453(b). The only disputed issue in this case is the amount in controversy.

First, the Court must determine the appropriate standard of proof. In the Ninth Circuit, this determination is informed by two "animating principles": first, "federal courts are courts of limited jurisdiction which we will strictly construe"; second, a plaintiff is "master of her complaint and can plead to avoid federal jurisdiction." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699-700 (9th Cir. 2007) (citing *Lowdermilk v. U.S. Bank National Ass'n,* 479 F.3d 994 (9th Cir.2007)) (internal quotations omitted).

The Ninth Circuit has described how three common scenarios affect standard of proof at the remand stage. In the first scenario, "[w]here the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego–Abrego v. The Dow Chem. Co.,* 443 F.3d 676, 683 (9th Cir.2006). Second, "[i]f the complaint filed in state court alleges damages in excess of the required federal jurisdictional amount, remand is warranted only if it appears to a 'legal certainty' that the claim is actually for less than the jurisdictional minimum." *Id.* at 683 n. 8. Third, "where the plaintiff has pled an amount in controversy less than $5,000,000, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." *Lowdermilk,* 479 F.3d at 1000.

In this case, Plaintiff argues that Defendant must show that the amount in controversy has been met "with legal certainty," since Plaintiff pled an amount in controversy less than $5,000,000.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677-DOC (DTBx)                                          Date: August 26, 2013
                                                                          Page 5

---

*See* FAC ¶ 26 (stating that "the aggregate claim including attorney's fees and costs, and all other requested relief are under the five million dollar threshold of [CAFA]."); *see also Lowdermilk*, 479 F. 3d at 1000. Defendant argues against the *Lowdermilk* standard, and cites the Supreme Court's recent decision in *Standard Fire Insurance Company v. Knowles,* 133 S. Ct. 1345 (2013), for the proposition that "Plaintiff's allegation should be ignored in determining whether jurisdiction under CAFA exists." Def's Opp'n at 9 (internal quotations omitted).

Defendant mischaracterizes the import of *Standard Fire*. *Standard Fire* addressed whether a class-action plaintiff could stipulate "prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total" in order to "remove the case from CAFA's scope." 133 S. Ct. at 1347. The Court held that because such a stipulation does not bind the as-yet absent class members, it does not operate to avoid federal jurisdiction under CAFA. *Id.* at 1349 ("Because his precertification stipulation does not bind anyone but himself, [Plaintiff] has not reduced the value of the putative class members' claims."). The case is silent on the issue of burden of proof.

This Court must follow *Lowerdermilk* unless the Supreme Court's opinion in *Standard Fire* undercuts the theory or reasoning of *Lowerdermilk* "in such a way that the cases are clearly irreconcilable." *Miller v. Gammie,* 335 F.3d 889, 900 (9th Cir.2003). They are not irreconcilable. The Court in *Standard Fire* emphasized that, in that case, the amount in controversy would "exceed[ ] $5 million *but for* the stipulation of the putative class representative," and that the district court therefore erred when it allowed the plaintiff's non-binding stipulation to defeat jurisdiction that would otherwise have been established. *Standard Fire,* 133 S.Ct. at 1348 (emphasis in original). *Lowdermilk,* like this case, but in contrast to *Standard Fire*, did not involve a stipulation; instead, it decided the defendant's *burden of proof* to show that CAFA's amount in controversy requirement was met when a plaintiff pled an amount in controversy below the $5,000,000 threshold.

Other courts interpreting *Lowdermilk* in light of *Standard Fire* have found that the "legal certainty" standard still applies, since *Standard Fire* "simply does not address the situation at issue in *Lowdermilk,* in which a putative class plaintiff, as master of his complaint, merely alleges— rather than stipulates to—an amount in controversy below the $5 million threshold." *Bicek v. C & S Wholesale Grocers, Inc.*, 2013 WL 4009239, at *7-8 (E.D. Cal. Aug. 5, 2013) ("[*Standard* Fire] is not "clearly irreconcilable" with *Lowdermilk,* and this Court is therefore bound by *Lowdermilk.*"); *see also Allen v. Utiliquest, LLC*, 2013 WL 4033673, at *2 (N.D. Cal. Aug. 1, 2013) (citing to *Standard* Fire, but finding that "[w]here, as here, a plaintiff alleges that the amount in controversy in an action is less than the jurisdictional minimum of $5,000,000, the Ninth Circuit requires the defendant to demonstrate with "legal certainty" that the amount in controversy is more than $5,000,000"); *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, 2013 WL 2156280, at *7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677-DOC (DTBx)　　　　　　　　　　　　Date: August 26, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 6

---

(N.D. Cal. May 17, 2013) ("*Standard Fire* was not in any way premised on a plaintiff not being the master of her complaint, but instead on the 'simple reason' that in a putative class action the named plaintiff's stipulation is not binding on the class."); *Bell v. Home Depot U.S.A., Inc.,* 2013 WL 1791920, at *4 n. 1 (E.D.Cal. Apr.26, 2013) (noting that the narrow issue decided in *Standard Fire* does not affect the legal certainty analysis).

Accordingly, because Plaintiff has specifically alleged that the total amount in controversy is less than $5,000,000, Defendant has the burden of establishing the amount in controversy to a legal certainty.

### 2.　Defendant's Amount in Controversy Calculations

The "legal certainty" standard sets a "high bar for the party seeking removal, but it is not insurmountable." *Lowdermilk*, 479 F. 3d at 1000. However, a defendant must provide sufficient "concrete evidence" to determine the actual amount in controversy. *Id.* at 1001 (discussing the defendant's failure to provide concrete evidence which would permit the court to "estimate with any certainty the actual amount in controversy."). A court "cannot base [its] jurisdiction on [a] Defendant's speculation and conjecture." *Id.* at 1002. Nor can removal be based on conclusory allegations. *Abrego,* 443 F.3d at 689. Instead, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. *Id.*; *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992) ("[T]he defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount."). In performing this analysis, courts consider facts in the removal petition and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *See Valdez v. Allstate Ins. Co.,* 372 F. 3d 1115, 1117 (9th Cir. 2004).

Here, Defendant submits only the barest speculation and conclusory statements identifying "allegedly unpaid overtime, unpaid minimum wages, meal period violations, penalties, for non-compliant wage statements, waiting time penalties, and other claims as set forth in his First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Ninth Causes of Action." Not. of Removal at 5. Defendant does not elaborate on these figures beyond the sentence quoted above, and offers no supporting affidavits or declarations that would establish their amounts with any certainty. Similarly, Defendant states that "[t]he value of the requested injunction to . . . the putative class should also be considered in evaluating the amount in controversy." *Id.* at 6. Again, Defendant makes no attempt to establish what that value might be. Also, Defendant states that attorney's fees "can exceed six figures in a class action and are properly aggregated and considered for purposes of determining the amount in controversy under CAFA," *id.*, but again Defendant does not even attempt to establish this claim with any certainty.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677-DOC (DTBx)                          Date: August 26, 2013
                                                                                                        Page 7

Defendant's only concrete evidence regarding the calculation of an amount in controversy is focused on Plaintiff's Eighth Cause of Action, in which Plaintiff seeks compensatory damages for, among other things, Defendant's alleged failure to reimburse delivery drivers for their mileage in violation of California Labor Code § 2802. On this claim, Plaintiff's First Amended Complaint alleges that "Defendant has failed to fully and reasonably reimburse the members of the Class for all necessary expenditures as required by California law," FAC ¶ 96, and that "the members of the Class are entitled to recovery from Defendant of the unpaid balance for the aforementioned necessary expenditures," *id.* ¶ 97.

Defendant submits two brief declarations from Sheryl Bell, the Aspen agent "responsible for managing Aspen's relationships with delivery drivers." Bell Decl. (Dkt. 1) ¶ 2; Supp. Bell Decl. (Dkt. 10-1) ¶ 2. Without including any of the records that she relies upon, Bell states that she has reviewed "electronic computer records that reflect route and mileage information for all delivery routes accepted by Aspen's drivers in California," that she has "personally queried and reviewed Aspen's computerized files of route records for independent contractor delivery drivers in California," and that, during the relevant period from February 15, 2009 to April 1, 2013, "independent contractor delivery drivers under contract with Aspen in California [the putative class members] had driven 55,814,305 miles." Supp. Bell Decl. ¶¶ 3-4. Company vehicles were not provided to delivery drivers, Aspen "did not separately reimburse them," and drivers "were required to drive those or comparable miles because they represented the deliveries the drivers agreed to make in exchange for payment from Aspen." *Id.* ¶ 4. Bell does not make any statement regarding the number of drivers she included in her analysis, the miles driven per driver, or what the drivers' actual payments were from Aspen.

Based on Bell's declaration, Defendant argues that, "[e]ven at a conservative reimbursement rate of 10 cents per mile, there is more than $5,000,000.00 in controversy as to Plaintiff's eighth cause of action (*i.e.*, 55,814,305 miles x 10¢/mile = $5,581,430.50)." Def's Opp'n at 11 (citing IRS Rev. Proc. 2008-72 (55¢/mile reimbursement rate for 2009); IRS Rev. Proc. 2009-54 (50¢/mile reimbursement rate for 2010); IRS Notice 2010-88 (51¢/mile reimbursement rate for 1/1/11 – 6/30/11), IRS Announcement 2011-40 (55.5¢/mile reimbursement rate for 7/1/11 – 12/31/11); IRS Notice 2012-01 (same for 2012); IRS Notice 2012-72 (56.5¢/mile reimbursement rate for 2013)).

Plaintiff argues that there are evidentiary problems with Defendant's reliance on Bell's declarations because they refer to records that are not in evidence, and because they might contain inadmissible hearsay. Pl's Reply (Dkt. 12) at 14. However, even taking all of Bell's statements as true, the Court cannot accept Defendant's reasoning regarding the calculation of total damages in controversy. Defendant assumes, without evidence, that class plaintiffs seek full reimbursement for every single one of the 55,814,305 miles identified by Bell's analysis. However, Plaintiff's complaint only alleges that "Defendant has failed to *fully and reasonably* reimburse the members of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677-DOC (DTBx)            Date: August 26, 2013
                                                                                                   Page 8

---

the Class for all necessary expenditures," FAC ¶ 96 (emphasis added), and that "the members of the Class are entitled to recovery from Defendant of *the unpaid balance* for the aforementioned necessary expenditures," *id.* ¶ 97 (emphasis added). It is not clear from Plaintiff's complaint that mileage was not somehow factored into the drivers' contracted fee, and that Plaintiff is not merely seeking an accounting of "the unpaid balance" regarding fair mileage payments. Bell's declaration acknowledges that drivers "were required to drive [55,814,305 miles] because they represented the deliveries the drivers agreed to make in exchange for payment from Aspen," Supp. Bell Decl. ¶ 4, and Defendant has not shown nor argued that the payments drivers received for their delivery services did not take into account the miles driven.

       Indeed, Plaintiff seeks reimbursement pursuant to California Labor Code § 2802, and the California Supreme Court has held that "an employer may satisfy its statutory business expense reimbursement obligation under section 2802 by paying employees enhanced compensation in the form of increases in base salary or commission rates," as long as the amounts "are sufficient to fully reimburse the employees for all expenses actually and necessarily incurred." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 575 (2007). Defendant has not established to a legal certainty that every class member seeks full recovery for every mile driven under contract, since Plaintiff's complaint leaves open the possibility that drivers were merely *insufficiently* reimbursed by their contracted payments on a scale far below what the 55,814,305 miles would suggest. Defendant's miscalculation is similar to the one examined in *Lowdermilk*, where the Ninth Circuit observed that "Defendant's numbers are weak" in part because "Defendant assumes that all class members would be entitled to the maximum damages under Oregon law, but provides no evidence to support this assertion." Lowdermilk, 479 F. 3d at 1001. In that situation, as here, "absent more concrete evidence, it is nearly impossible to estimate with any certainty the actual amount in controversy." *Id.*

### 3. Conclusion

       The "legal certainty" standard sets a high bar, and Defendant has failed to clear it. While it is possible that a thorough and comprehensive set of calculations from Defendant could have led to a different result, here the Defendant chose to offer evidence and argument regarding only one of Plaintiff's class claims. Accordingly, for the reasons outlined above, and because the Court must heed the Ninth Circuit's instruction to "strictly construe our jurisdiction," *Lowdermilk*, 479 F.3d at 998, the Court finds that CAFA jurisdiction does not exist.

### c. Diversity Jurisdiction Over Plaintiff's Individual Claim

       In the alternative, Defendant argues that jurisdiction exists over Plaintiff Richard Maximo's individual claim pursuant to 28 U.S.C. § 1441(a). The removal statute requires, among other things,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677-DOC (DTBx)　　　　　　　　　　　　Date: August 26, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 9

---

that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see id.* § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant....").

　　　In his complaint, Plaintiff alleged that his individual claim, including all other requested relief, fell under the $75,000 federal jurisdictional threshold. FAC ¶¶ 25, 26. He argues that, under *Lowdermilk*, Defendant should have the burden of showing that the amount in controversy exceeds $75,000 to a legal certainty. *See Belair Land Co., LLC v. Durazo*, 2012 WL 591925, at *3 n.3 (E.D. Cal. Feb. 22, 2012) (observing that "several district courts have applied *Lowdermilk* in the Section 1332(a) removal context"); *Lara v. Trimac Transp. Servs,* 2010 WL 3119366 (C.D. Cal. Aug.6, 2010). Defendant, however, argues that the Federal Courts Jurisdiction and Venue Clarification Act of 2011, 28 U.S.C. § 1446(c)(2), "states that the preponderance of the evidence standard applies where [an individual] Plaintiff seeks a money judgment and the State practice permits recovery of damages in excess of the amount demanded." *Bolton v. U.S. Nursing Corp.*, 2012 WL 5269738, at *4 (N.D. Cal. Oct. 23, 2012); *see also Belair Land Co.*, 2012 WL 591925, at *3 n.3 (noting that 28 U.S.C. § 1441(c) "was substantively amended" by the 2011 Act and suggesting that *Lowdermilk*'s higher standard would no longer apply in the context of an individual claim).

　　　The Court need not determine which standard applies, because Defendant's Notice of Removal and other briefing fail to establish an amount in controversy above $75,000 even by a "preponderance of the evidence." A court "cannot base [its] jurisdiction on [a] Defendant's speculation and conjecture." *Lowdermilk*, 479 F. 3d at 1002. Nor can removal be based on conclusory allegations. *Abrego,* 443 F.3d at 689. Instead, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. *Id.*; *Gaus*, 980 F.2d at 567 ("[T]he defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount.").

　　　Here, Defendant's Notice of Removal states that "the matter in controversy in the State Action exceeds the sum of $75,000, exclusive of interests and costs, with respect to Maximo's individual claims." Not. of Removal at 7. In support of this argument, Defendant describes Plaintiff's claims as follows:

> By his Third cause of Action, Maximo alleges that he "consistently worked over five (5) hours per shift" but was not afforded a meal period and seeks compensatory damages in the form of "an additional hour of compensation at the . . . regular rate of pay for each meal period the employer []failed to provide" since February 15, 2009, or the date his contract with Aspen commenced on May 16, 2010. (FAC ¶¶ 59-62.) By his Fourth Cause of Action, Maximo alleges that Defendant "failed to provide

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677-DOC (DTBx)                                  Date: August 26, 2013
                                                                  Page 10

> Plaintiff . . . with an itemized statement that fulfills the requirements of [California] Labor Code § 226 in that it [did] not provide Plaintiff . . . with an accurate accounting of earned wages, rates of pay, total hours worked, the name of the employer, or applicable deductions" (FAC ¶ 65), and on that basis seeks penalties under section 226(e) of the Labor Code for allegedly non-compliant wage statements since February 15,2012 in the amount of $50.00 for the first violation and $100.00 for each subsequent violation, not to exceed $4,000.00 (FAC ¶ 67 & "Prayer for Relief" ¶ 10). By his Eighth Cause of Action, Maximo alleges that Defendant "has never reimbursed and/or credited" him for allegedly mandatory disability insurance or scanners and other equipment purchased for use on delivery jobs and has failed to reimburse Maximo for mileage since February 15, 2009, or the date his contract commenced on May 16, 2010. (*Id.* ¶¶ 91 ,93.) He seeks reimbursement for all such amounts. (*Id.* ¶¶ 94-97.). A conservative estimate of the damages placed at issue by Maximo's Third, Fourth, and Eighth Causes of Action <u>exceeds $75.000.00</u>. (Bell Decl. ¶ 5.)

Not. of Removal at 7-8. Defendant goes on to list Plaintiff's other causes of action, but states that "Defendant's estimate that Maximo's claims exceed $75,000 . . . does not include any of the foregoing categories of damages." *Id.* at 8. Likewise, Defendant states that "Maximo's proportionate share of the attorney's fees in controversy are includable in determining the amount in controversy as to his individual claims," *id.*, but does not suggest what that amount might be.

 Consequently, the only evidence offered by Defendant that is not speculative or conclusory must be found in the exceedingly brief declarations of Sheryl Bell. *See* Bell Decl. (Dkt. 1) ¶ 2; Supp. Bell Decl. (Dkt. 10-1) ¶ 2. Without including any of the records that she relies upon, Bell states that she has reviewed "Aspen's computerized files of route records for independent contractor delivery drivers in California . . . and records of payments and offsets made to Mr. Maximo," that "[t]hose records reflect the total number of miles Mr. Maximo drove as an independent contractor for Aspen; the distance and frequency of Mr. Maximo's delivery routes; the number of payments made to Mr. Maximo since February 15, 2012; and the amount of offsets for occupational accident insurance (OCC/ACC) made from Aspen's payments to Mr. Maximo," and that "[b]ased on that information, the damages placed at issue by Mr. Maximo's individual claims for failure to provide meal periods (*i.e.*, $8.00/hr. minimum wage multiplied by the number of routes exceeding 5 hours in drive time), penalties for non-compliant wage statements (*i.e.* ($50 x 1 payment) + ($100 x 20 payments)), and reimbursement for mileage and occupational accident insurance offsets . . . exceeds $75,000." Supp. Bell Decl. ¶ 6.

 Bell offers no actual calculation, and no actual estimate. The total amount in controversy that "exceeds $75,000" is not specified, nor are any of the relevant figures that would have gone

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-0677-DOC (DTBx)            Date: August 26, 2013
                                                                                           Page 11

---

into her calculation. Defendant does not provide any evidence on the number of Maximo's routes exceeding 5 hours drive time, his mileage to be reimbursed, or his accident insurance offsets. The only calculable figure offered to the Court based on the numbers presented by Bell would be the total penalties at issue for non-compliant wage statements: ($50 x 1) + ($100 x 20) = $2,050. This evidence is insufficient to give the Court any idea of the actual value Plaintiff's total individual claims.

       Defendant argues that its "declaration evidence is similar to evidence routinely used to demonstrate the amount in controversy" in other cases regarding motions to remand. Def's Opp'n at 17 (citing *Bolton*, 2012 WL 5269738, at *4; *Sims v. AT & T Mobility Servs. LLC*, 2013 WL 753496 (E.D. Cal. Feb. 27, 2013); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012)). The Court does not disagree that declarations of knowledgeable individuals can be introduced as evidence to establish an amount in controversy. However, in each of the cases cited by Defendant, the declarants *actually made calculations* and *actually estimated a total amount in controversy*. See *Bolton*, 2012 WL 5269738, at *2 (describing a comprehensive accounting of relevant figures adding up to an amount in controversy of "at least $8,067,600"); *Sims*, 2013 WL 753496, at *3-7 (describing, in detail, each of the figures and analyses that went into the defendant's calculation of an amount in controversy of $8,267,001.80); *Jasso*, 2012 WL 699465, at *4-5 (similarly describing the defendant's detailed calculations that added up to an amount in controversy of $5,816,742). Here, the Court is left to wonder not only how Bell came up with her estimate, but also what that estimate might be. Beyond the $2,050 previously discussed, Defendant has offered nothing beyond conclusory statements and a tantalizingly incomplete set of equations.

       Accordingly, Defendant has failed to meet its burden to show by a "preponderance of the evidence" that Plaintiff Maximo's individual claims meet the amount in controversy requirement of the removal statute.

       **III.**     **Disposition**

       For the foregoing reasons, the Court GRANTS Plaintiff's Motion and REMANDS this case to San Bernardino Superior Court. All scheduled hearings before this Court are VACATED.

       The Clerk shall serve a copy of this minute order on counsel for all parties in this action.

MINUTES FORM 11
CIVIL-GEN                                                           Initials of Deputy Clerk: jcb